KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.— April, 1882.

## EARLY *v.* EARLY.

*In the matter of the probate of the will of* WILLIAM EARLY, *deceased.*

The requirement, in Code Civ. Pro., § 1865, that the provisions of a lost or destroyed will must be "clearly and distinctly proved by at least two credible witnesses," should receive a liberal construction; and its spirit is complied with by holding that it applies only to those provisions which affect the disposition of property, and are of the substance of the will.

The destruction of a will in the life-time of a testator, without his knowledge or consent, in disregard of his intention, and to the injury of a beneficiary, though with no design to gain advantage, or injure or deceive any one, is fraudulent within the meaning of the same section.

Upon an application to prove a will alleged to have been fraudulently destroyed in testator's life-time, the subscribing witnesses agreed that the will was read aloud to, and signed by the testator, in their presence, and that they signed in his presence, but they differed as to whether the declaration of the nature of the instrument, and the request to sign, were made by the testator, one witness swearing positively that they were so made, and the other stating that they were made in testator's presence, by M., who drew the will and supervised the execution.

Though testator was ill and feeble, it did not appear that he was in such a condition as to be unable to make or dissent from such a request and declaration; the execution was not immediately before his death; and both subscribing witnesses testified that he was of sound mind. Two witnesses agreed that all the property was devised and bequeathed to testator's widow, but differed as to whether an executor was appointed. After the will was executed, the draftsman took it with him to keep for testator, put it among his papers, and died. His son found it among his father's papers and destroyed it, during testator's life-time, as a paper of no importance.—*Held,*

1. That the due and proper execution was shown.
2. That the provisions were sufficiently proved, notwithstanding the doubt as to the appointment of an executor, which was not an indispensable part of the will.
3. That the destruction was fraudulent, as against the beneficiary, within the meaning of the statute.
4. That the petition for probate should be granted.

THIS was an application by Margaret Early, decedent's widow, and sole legatee and devisee, for the probate of a will alleged to have been fraudulently destroyed in decedent's life-time; opposed on behalf of William J. Early, decedent's infant son.

The facts appear sufficiently in the opinion.

THOMAS P. SMITH, *for petitioner.*

JOHN R. TRESSIDDER, *special guardian for infant.*

THE SURROGATE.—This is an application to prove a will alleged to have been fraudulently destroyed during the life of the testator. It is claimed, on behalf of the infant, on evidence offered on the part of the proponent, that the will was not properly executed; that the contents were not proved by two witnesses; and that it was not fraudulently destroyed.

The testimony as to the execution of the will is not satisfactory, yet when closely analyzed it will be found to be sufficient. The will was drawn by a Mr. McCann,

who supervised its execution, and who was no doubt familiar with the requirements of the statute on that subject, as he was in the habit of drawing wills. The subscribing witness, Lennon, testifies positively that the testator declared, in the presence of himself and the other witness, that the paper referred to was his last will. The other witness, Quail, says the same thing on his direct examination ; but, on his cross-examination, he testifies in substance that he don't think it was Early who made the declaration that the paper was his last will and testament, but that it was Mr. McCann, and that the declaration was made in the presence of Early. Lennon also testified that the testator requested him to sign the will, but Quail says that the request was made of him by McCann in the presence of the testator. The will was read aloud to the testator in the presence of the witnesses, and the testator signed it in the presence of both witnesses, who also signed it in his presence.

The only questions in dispute are as to the declaration of the nature of the instrument by the testator, and as to his request to the witnesses to sign it. There is positive proof that the testator expressly declared the instrument signed by him to be his last will, and the request to the witnesses to sign was made in his presence by the person who was supervising the execution of the will. That was sufficient (Gilbert *v.* Knox, 52 *N. Y.*, 125 ; Peck *v.* Cary, 27 *Id.*, 9).

It is quite true that, if it had appeared that the testator was so ill and feeble, at the time of the execution of his will, as to make it doubtful whether he understood what was going on, or was able to dissent from what Mr. McCann said or did in his behalf, the proof made,

as to the testator's request to the witnesses to sign, would be insufficient (Heath *v.* Cole, 15 *Hun*, 100). But such is not the case. Although the testator was ill and feeble, and had been so for some time, yet he was not in such a condition as to be unable to declare the nature of the instrument executed by him, and to request the witnesses to sign it. The will was not executed within a short time before his death, and the subscribing witnesses both swear that his mind was sound. It is not to be inferred that he was incapable of making a will, much less of objecting to what McCann said, merely from the fact that he was weak in body and mind (Horn *v.* Pullman, 72 *N. Y.*, 269, 276 ; Snyder *v.* Sherman, 23 *Hun*, 139, 141).

In Belding *v.* Leichardt (2 *S. C.* [*T. & C.*], 52 ; 56 *N. Y.*, 680), the testator was very ill and feeble, and it was held sufficient that the witnesses had been requested to sign by a third person, in the presence of the testator.

In Doe *v.* Roe (2 *Barb.*, 200), the testator was also ill when he executed his will, and there was no other request to the witnesses, to subscribe their names as witnesses, than that which was made by the doctor, who was attending the testator, in his presence.

In Brown *v.* De Selding (4 *Sandf.*, 10), the testatrix was ill, and died a few days after the execution of the will ; the request to the witness to sign was made by others in her presence, and the court thought that sufficient.

One of the subscribing witnesses, and the person who last had the will in his possession, agree that all the testator's property was devised and bequeathed to his widow ; they do not agree, however, as to whether an

executor was appointed.    Mr. Quail thinks that Mr. Boyle was appointed executor, while Dr. McCann is satisfied that nothing was said on the subject.    If the will did contain a provision appointing Boyle executor, such a provision would no doubt form part of the will (Barber *v.* Barber, 17 *Hun*, 72), but it would not be an indispensable part of it, and would not in any way affect the disposition which the testator has made of his property for the benefit of his widow.    Section 1865 of the Code requires that the provisions of a lost will must be clearly and distinctly proved by at least two credible witnesses, before it can be admitted to probate; but this section must receive a liberal construction (Hook *v.* Pratt, 8 *Hun*, 102, 109); and its spirit is complied with by holding that it applies only to those provisions which affect the disposition of the testator's property, and which are of the substance of the will.    The contents of the will were, therefore, sufficiently proved by two witnesses.

The will was destroyed during the lifetime of the testator under the following circumstances.    Immediately after it was executed, Mr. McCann took charge of it, and told the testator that he would put it in the bank and keep it for him.    After Mr. McCann's death, but before the death of the testator, Mr. McCann's son found the will among his father's papers, and, not considering it of any importance, destroyed it.    Section 1865 of the Code provides that the lost will must have been in existence at the time of the testator's death, or *fraudulently* destroyed in his life-time.

In the destruction of this will there was no fraud, in the sense of an intent to profit by it, or to deceive or

injure any one ; but the will was destroyed without the knowledge or consent of the testator, in disregard of his intention, and to the injury of the person who was made the object of his bounty. That was a *fraudulent* destruction, within the meaning of section 1865 (Schultz *v.* Schultz, 35 *N. Y.*, 653, 656).

Decreed accordingly.